UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
THOMAS SHERIDAN and MELISSA SHERIDAN,

               Plaintiffs,           <u>MEMORANDUM & ORDER</u>
                                    16-CV-5085(JS)(ARL)
      -against-

D&D GRADING, INC., DONALD DONDERO,
and ROBERT LIERE d/b/a LIERE FARMS,

               Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:       Ralph A. Hummel, Esq.
                  137 Woodbury Road
                  Woodbury, New York 11797

For D&D Grading     Lilia Factor, Esq.
and Donald Dondero: Napoli Shkolnik PLLC
                  400 Broadhollow Road, Suite 305
                  Melville, New York 11747

For Robert Liere:   Robert J. Cava, Esq.
                  Law Offices of Robert J. Cava, P. C.
                  1038 Little East Neck Road
                  West Babylon, New York 11704

SEYBERT, District Judge:

      Before the Court in this Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") action is a motion for summary judgment by Defendant Robert Liere, d/b/a Liere Farms ("Liere") (D.E. 32); a motion for summary judgment by Defendants D&D Grading, Inc. and Donald Dondero ("Dondero" and together with D&D Grading, Inc., "D&D") (D.E. 34); and Lilia Factor, Esq.'s motion to withdraw as counsel for D&D (D.E. 36). For the following reasons, Liere's motion for summary judgment is

DENIED; D&D's motion for summary judgment is DENIED; and counsel's motion to withdraw is GRANTED to the extent that the Court will conduct a hearing.

## BACKGROUND

I.  Factual Background[1]

Thomas and Melissa Sheridan ("Plaintiffs") live with their four children in St. James, New York.  At all times relevant to this action, they resided and continue to reside at 131 Hobson Avenue.  (Sheridan Aff., D.E. 33, ¶ 6.)  In 2015, Plaintiffs installed a pool in their backyard, and in 2016, added a patio.  They then decided to grade the backyard, add a layer of topsoil,

---

[1] The facts are taken from the Complaint (Compl., D.E. 1); the parties' Local Civil Rule 56.1 Statements, Responses, and Counterstatements (Liere 56.1 Stmt., D.E. 32-2; Pls. 56.1 Resp., D.E. 33-3; D&D 56.1 Resp., D.E. 34-10 at 1-4; D&D 56.1 Counterstmt., D.E. 34-10 at 5-8; Pls. 56.1 Resp. to D&D's Rule 56.1 Counterstmt., ("Pls. Second 56.1 Resp."), D.E. 37-3; and the documents annexed to the parties' papers.

At points in D&D's 56.1 Statement, it states that it "neither admit[s] nor den[ies] the statements in Liere's Rule 56.1 Statement." (E.g., D&D 56.1 Stmt. ¶¶ 3-8, 18, 20.)  In these instances, the Court deems the correspondingly numbered paragraphs from Liere's 56.1 Statement to be admitted.  See Local Civ. R. 56.1(c)-(d).

Further, Plaintiffs "controvert," without more, almost every paragraph of Liere's 56.1 Statement with a citation to Thomas Sheridan's affidavit, paragraphs 8-14 and 33-39, and to a copy of a text message exchange between Thomas Sheridan and Dondero. The Court will not exhaustively search these documents to ascertain why Plaintiffs believe they controvert Liere's statements.

seed, and apply fertilizer. (Sheridan Aff. ¶ 7.) They contracted[2]

with D&D to perform these services and D&D completed the work over

three days in June 2016. D&D delivered and spread 35 yards of

topsoil. (Sheridan Aff. ¶¶ 8, 11, 13.) Before spreading the

topsoil, Dondero re-graded the existing fill or "sub-grade," which

had construction debris, plywood, plastic, and oversized rocks in

it. D&D removed approximately six wheelbarrows of large debris

before spreading the topsoil. (D&D 56.1 Counterstmt. ¶ 12.)

Plaintiffs paid D&D $1,000 cash on June 3 and $1,100 in

cash on June 6, and D&D acknowledged payment in full. Dondero

requested cash payment because his topsoil supplier--Liere--worked

in cash. (Sheridan Aff. ¶¶ 12-13.) Dondero told Plaintiffs

several times that the supplier was Liere and said "this topsoil

is the best around." (Sheridan Aff. ¶¶ 9, 14.)

Liere states he is the sole member of a limited liability

company known as "Liere Farms, LLC." (Liere 56.1 Stmt. ¶¶ 12-13.)

Liere claims that he did not own or operate Liere Farms in his

individual capacity because he had formed an LLC in 2004 that owned

and operated the farm at all times relevant to this action. (Liere

---

[2] The contract is a short, handwritten document labeled
"Proposal" and states that D&D "hereby submit[s] specifications
and estimates for: back yard prep area for topsoil, grade
subgrade and rake clean, final grade with 25 yards topsoil, hard
rake ready for seed-- $1,400. Seed area turf quality seed
lesco, seed, starter fertilizer additional $380.00. Paid in
full" and is signed by Dondero. (Contract, D.E. 33-7, Ex. C.)

Aff., D.E.32-3, ¶ 4-6.)  According to Liere, on June 3 and June 6, 2016, Liere Farms, LLC sold 30 yards[3] fertilized topsoil to "a business known as Liere, II, Inc."  (Liere 56.1 Stmt. ¶¶ 17, 19.) Liere II, Inc. is owned by Liere's nephew, Johnny Liere.  (Liere Aff. ¶ 18.)  Liere II, Inc. delivered the topsoil to Plaintiffs' residence at the request of Dondero, and Dondero paid Liere II, Inc. $450.  (Liere 56.1 Stmt. ¶¶ ¶21, 23.)  D&D states that it purchased the topsoil from Robert Liere through his nephew, Johnny Liere, who delivered it to Plaintiffs' house.  (D&D 56.1 Resp. ¶ 17.)

Dondero believed that Liere's topsoil was good because he had visited the facility and seen burned wood and ashes added to the soil.  Liere told him the ash improves the quality.  (D&D 56.1 Counterstmt. ¶ 5.)  Dondero had used Liere's soil for other clients and there were no problems.  While working on Plaintiffs' backyard, Dondero did not detect any foreign substances in the soil.  (D&D 56.1 Resp. ¶¶ 6-7, 16.)

A few days after the project was completed, Plaintiffs noticed metal nails, construction debris, rebar, gypsum, asbestos shingles, glass, ash, plastic, electrical wire, plywood, and

---

[3] To the extent Plaintiffs allege D&D spread 35 yards of topsoil, there was 3-5 yards of topsoil at the home when D&D arrived. Thomas Sheridan said it was from Olsen's Nursery and that D&D could use it for the job.  (D&D 56.1 Counterstmt. ¶ 8.)  This simply creates another issue of fact not resolvable at this stage.

lumber in the soil.  They immediately notified the New York State Department of Environmental Conservation ("DEC") and the DEC inspected their yard, took samples, and instructed them not to remove any material until the investigation was complete. (Sheridan Aff. ¶¶ 15-16.)  DEC performed laboratory analysis on the soil samples and detected numerous hazardous materials including arsenic, chromium, benzo(b)fluoranthene, chrysene, zinc, copper, and lead.  (Sheridan Aff. ¶ 17; DEC Lab Report, Ex. F, D.E. 33-10; Chart, Ex. G, D.E. 33-11.)  DEC told Plaintiffs they "needed to retain licensed environmental professionals to investigate and remove the contamination," so they hired an environmental consultant Peter Dermody, C.P.G., and a remediation company Eastern Environmental Solutions, Inc.  (Sheridan Aff. ¶ 19.)  Plaintiffs incurred response costs and have included receipts along with their papers: $4,890 to Dermody for consultation; $27,914.24 to Eastern Environmental Solutions, Inc. for remediation; $902.50 for replacement soil; $2,282.75 for spreading and re-seeding the soil; $646.32 for sprinkler repair; and $23,735.27 in attorneys' fees, for a total of $60,367.08. (Sheridan Aff. ¶ 21; Receipts, Exs. H-M, D.E. 33-12 through 33-17.)

## II.  Procedural History

Plaintiffs commenced this action on September 13, 2016, alleging CERCLA claims (Counts 1-2) and state law claims of strict

liability, fraud and deceit, breach of contract, unjust enrichment, and negligence (Counts 3-7). (Compl., D.E. 1.) Liere answered on October 24, 2016. (Liere Ans., D.E. 11.) D&D answered on December 8, 2016. (D&D Ans., D.E. 13.) D&D asserted a counterclaim against Plaintiffs--that any foreign materials were present before D&D did work and Plaintiffs were potentially responsible parties. It also asserted a crossclaim against Liere claiming that all topsoil was obtained from him and it was entitled to contribution from Liere should it be found liable. Plaintiffs filed their reply on December 9, 2016. (Pls. Reply, D.E. 15.) Liere replied to the crossclaims on December 30, 2016. (Liere Reply, D.E. 17.)

Upon completion of discovery, Liere moved for summary judgment. (Liere Mot., D.E. 32.) Plaintiffs filed their brief in opposition to Liere's motion. (Pls. Opp., D.E. 33-4.) D&D filed its motion for summary judgment (D&D Mot., D.E. 34) and a reply in response to Plaintiffs' opposition to Liere's motion and in further support of the motion (D&D Reply, D.E. 35). Plaintiffs then filed another opposition, this time to Liere's motion and D&D's motion. (Pls. Second Opp., D.E. 37-4.) D&D filed another reply, in response to Plaintiffs' opposition to both motions and in further

support of its motion for summary judgment. (D&D Second Reply, D.E. 38.)[4]

During the above motion practice, D&D's attorney filed a motion to withdraw (Mot. to Withdraw, D.E. 36) and the Court deferred ruling on.

DISCUSSION

I.  Legal Standard

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986). In determining whether an award of summary judgment is appropriate, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential

_____

[4] The Court primarily considers the later-filed, fully briefed papers to resolve these motions. Liere filed no additional papers after his initial motion for summary judgment.

Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once
the movant makes such a showing, the non-movant must proffer
specific facts demonstrating "a genuine issue for trial." Giglio
v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at
*4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation
omitted). Conclusory allegations or denials will not defeat
summary judgment. Id. However, in reviewing the summary judgment
record, "'the court is required to resolve all ambiguities and
draw all permissible factual inferences in favor of the party
against whom summary judgment is sought.'" Sheet Metal Workers'
Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL
6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler
Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

II. Analysis

    A. The Parties' Arguments

        In moving for summary judgment, Liere contends that this
case falls within CERCLA's "fertilizer exception," 42 U.S.C.
§ 9601(22). He further argues that Plaintiffs have not
demonstrated a "release" of any "hazardous substance" as CERCLA
defines the terms. (Liere Mem., D.E. 32-7, at 6.) He also
maintains that he is not liable as an owner or operator because
"Liere Farm, LLC was and is the owner and operator of the Liere
Farms at all times referenced in the [C]omplaint." (Liere Mem. at
9.) Finally, Liere argues the state law claims should be dismissed

as he is not responsible in an individual capacity, and that in the event the Court dismisses the CERCLA claims, it should not exercise supplemental jurisdiction over the remaining state law claims. (Liere Mem. at 9-10.)

D&D argues that it is not a "generator" or "transporter" under CERCLA and that it did not possess the requisite level of knowledge or intent. (D&D Second Reply at 5.) D&D also raises several defenses: topsoil is a useful product, the materials disposed of were not hazardous, and the fertilizer exception. (D&D Second Reply at 6-9.) D&D believes Liere may have personal liability and requests that if this Court denies its motion, Liere should remain a party. (D&D Second Reply at 10.)

Plaintiffs oppose both motions. They respond that there are material facts in genuine dispute, precluding summary judgment. (Pls. Second Opp., D.E. 37-4, at 5-6.) Turning to Defendants' specific arguments, Plaintiffs respond that contaminated topsoil is not a useful product; even if CERCLA requires intent, triable issues exist as to Defendants' intent here; the substances in the soil were hazardous; there was no normal application of fertilizer because Defendants released hazardous substances; and Liere is responsible for his actions and his LLC attempts to evade responsibility (Pls. Second Opp. at 10-15.) Plaintiffs do not address their state law claims or whether

the Court should exercise supplemental jurisdiction if it grants summary judgment as to the CERCLA claims.

B.  <u>CERCLA</u>

"'CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition.'"  <u>ASARCO LLC v. Goodwin</u>, 756 F. 3d 191, 198 (2d Cir. 2014) quoting <u>Price Trucking Corp. v. Norampac Indus.</u>, 748 F.3d 75, 79 (2d Cir. 2014).  CERCLA imposes strict liability on entities generally referred to as potentially responsible parties ("PRPs").  <u>Town of Islip v. Datre</u>, 245 F. Supp. 3d 397, 417 (E.D.N.Y. 2017).  Section 107 defines four categories of PRPs:

> (1) the owner and operator of a vessel or a facility,[5]
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport

---

[5] The parties do not dispute that the backyard is a "facility" under CERCLA, which includes "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . ." 42 U.S.C. § 9601(9).

for disposal or treatment, of hazardous
substances owned or possessed by such person,
by any other party or entity, at any facility
or incineration vessel owned or operated by
another party or entity and containing such
hazardous substances, and

(4) any person who accepts or accepted any
hazardous substances for transport to disposal
or treatment facilities, incineration vessels
or sites selected by such person, from which
there is a release, or a threatened release
which causes the incurrence of response costs,
of a hazardous substance.

42 U.S.C. § 9607(a).

1.  Hazardous Substances

Liere argues that Plaintiffs' expert, Peter Dermody,
C.P.G., merely stated what Plaintiffs said they found in the soil,
and not that he himself had found the substances when he sampled
it.  (Liere Mem. at 7.)  This is contradicted by Dermody's
affidavit, where he states that "[l]aboratory analysis of the
samples taken by DEC at plaintiffs' residence found the presence
of significant quantities of seven (7) 'hazardous substances' (the
relevant term used in and defined by CERCLA).  These substances
are: arsenic; chromium; copper; zinc; lead; benzo(b)fluoranthene;
and chrysene."  (Dermody Aff., D.E. 33-1, ¶ 10.)  Another expert,
Jeffrey Bohlen, made similar statements about the presence of
hazardous substances.  (Bohlen Aff., D.E. 33-2, ¶ 8 ("The fact
that the contamination found at plaintiffs' residence was non-
hazardous waste under RCRA [Resource Conservation and Recovery

Act] does not mean they were not hazardous substances under CERCLA;
to the contrary, laboratory analysis conclusively determined that
the contamination found at plaintiffs' residence included seven
(7) 'hazardous substances' under CERCLA's statutory
definition.")); see also New York v. Next Millennium Realty, LLC,
160 F. Supp. 3d 485, 508 (E.D.N.Y. 2016) ("Pursuant to subsection
(B) of Section 101(14) of CERCLA and under § 9602, the EPA has
listed over 700 hazardous substances in Table 302.4 of 40 C.F.R.
§ 302") (internal quotation marks and citation omitted). The
substances identified by Plaintiffs are classified as hazardous
substances. Further, "solid waste" can be classified as a
hazardous substance under CERCLA. See 40 C.F.R. § 302.4(b). Thus,
any argument that the topsoil did not contain hazardous substances
under CERCLA is belied by Plaintiffs' evidence, and Defendants
have failed to meet their burden for summary judgment on this
ground.

> 2. Release

Next, the hazardous substance must be "released" to
impose CERCLA liability. CERCLA defines a "release" as "any
spilling, leaking, pumping, pouring, emitting, emptying,
discharging, injecting, escaping, leaching, dumping, or disposing
into the environment." 42 U.S.C. § 9601(22). The term "release"
is "liberally construed." United States v. Honeywell Int'l, Inc.,
542 F. Supp. 2d 1188, 1198 (E.D. Cal. 2008) ("[i]t is undisputed

that the [ ] subdivision tested positive for arsenic contamination. Therefore, a 'release' under the terms of the statute unquestionably occurred."). Courts have held that the presence of hazardous materials at sites _ipso_ _facto_ demonstrates that there has been a release of the materials. <u>Next Millennium Realty</u>, 160 F. Supp. 3d at 508 (collecting numerous cases holding, generally, that the presence of hazardous substances in soil demonstrates a "release"). Here, the evidence shows the presence of at least seven hazardous substances in the topsoil. Thus, Plaintiffs have established a release under CERCLA.

Defendants make a cursory argument that this case falls under the "fertilizer exception" because the Complaint states that the purpose of the transaction was to apply top soil and fertilizer. (Liere Mem. at 6-7; D&D Second Reply at 9-10.) CERCLA imposes strict liability for the release of hazardous substances but excludes "the normal application of fertilizer." 42 U.S.C. § 9601(22)(D). As a prior court has noted, "CERCLA itself does not define what a 'normal' application of fertilizer is." <u>City of Tulsa v. Tyson Foods, Inc.</u>, 258 F. Supp. 2d 1263, 1287 (N.D. Okla. 2003). The parties have not pointed this Court to any cases that inform the exception; thus, this Court will proceed as the <u>City of Tulsa</u> court did and "construe the term in accordance with its ordinary meaning." <u>Id.</u> at 1287-88 (finding an issue of fact as to whether the "land application of poultry litter [the combination

of poultry manure and the bedding material lining poultry houses] is a normal application of fertilizer").

Here, Plaintiffs argue that "the normal application of fertilizer" permits only that, and appear to argue that "fertilizer" such as this, containing numerous hazardous substances, does not fall within the exception. (Pls. Second Opp. at 13.) The Court agrees. In <u>City of Waco v. Schouten</u>, 385 F. Supp. 2d 595 (W.D. Tex. 2005), the court held that allegations that the defendants improperly stored and failed to maintain large amounts of waste that contained phosphorus took their actions outside the fertilizer exception. In <u>Fallowfield Dev. Corp. v. Strunk</u>, Nos. 89-CV-8644 & 90-CV-4431, 1994 WL 498316, at *24 (E.D. Penn. Sept. 2, 1994), the court held that the fertilizer applied was not normal because it was contaminated by several substances including lead. Here, the Court similarly finds that applying topsoil that contains numerous CERCLA hazardous substances is not "the normal application of fertilizer" within the meaning of the statute, and the exception does not apply. Defendants have not met their burden for summary judgment on this issue.

3. <u>Intent</u>

Plaintiffs generally allege that Defendants are liable as arrangers, generators, and transporters of hazardous

substances.  (Compl. ¶¶ 37-43; <u>see</u> 42 U.S.C. § 9607(a).)[6]

        a.   <u>Liere</u>

      Liere cursorily argues that he is not liable because Liere Farms, LLC was the owner and operator of Liere Farms at all relevant times.  (Liere Mem. at 8-9.)

       "[U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility.  To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."  <u>United States v. Bestfoods</u>, 524 U.S. 51, 66-67, 118 S. Ct. 1876, 1887, 141 L. Ed. 2d 43 (1998).  Individuals may be held liable, as

> [u]nder CERCLA "owner or operator" is defined to mean "any person owning or operating" an onshore facility, and "person" includes individuals as well as corporations. More important, the definition of "owner or operator" excludes "a person, who, without participating in the management of a . . . facility, holds indicia of ownership primarily to protect his security interest in the facility."  The use of this exception implies that an owning stockholder who manages the corporation . . . is liable under CERCLA as an "owner or operator."  That conclusion is

---

[6] Plaintiffs do not allege that Liere or D&D are "operators" under CERCLA.

15

consistent with that of other courts that have
addressed the issue.

State of N.Y. v. Shore Realty Corp., 759 F. 2d 1032, 1052 (2d Cir.
1985) (citing 42 U.S.C. 9601(20)(A)), (21) (first ellipsis in
original).

As the movant, it is Liere's burden to demonstrate there
are no issues of fact as to his control over Liere Farms. Liere
owned and operated Liere Farm individually and then formed a
limited liability company in June 2004. He states that Liere Farms
LLC "owned and operated the farm at all times alleged in the
complaint." (Liere Aff. ¶ 6.) He has not indicated that he is an
absent owner or that someone else exercises control and authority
over the day-to-day operations of Liere Farm. To the contrary, he
states that the formula for the topsoil is a "trade secret" that
he will not "disclos[e] the complete formula" of and the topsoil
has "richness, moisture content and jet black color." (Liere Aff.
¶¶ 14-16.) The natural inference is that Liere exercised a
significant degree of control over the topsoil operation. See
Shore Realty, 759 F. 2d at 103738 (an individual was personally
liable under CERCLA where he "knew that hazardous waste was stored
on the site" and "incorporated [an LLC] solely for the purpose of
purchasing [the site]. All corporate decisions and actions were
made, directed and controlled by him."). Thus, issues of fact

exist and summary judgment in Liere's favor on this basis is inappropriate.

Liere also appears to argue that he did not know where the topsoil would end up, but "had been told." (Liere Aff. ¶¶ 22-27.) However, "the Second Circuit has recognized that 'arranger liability can attach to parties that do not have active involvement regarding the timing, manner or location of disposal,' thus suggesting that knowledge of the precise disposal location is immaterial." <u>Town of Islip</u>, 245 F. Supp. 3d at 421 (quoting <u>Gen. Elec. Co. v. AAMCO Transmissions, Inc.</u>, 962 F.2d 281, 286 (2d Cir. 1992)). Thus, "alleged arrangers cannot escape liability by 'contracting away' their responsibility or alleging that the incident was caused by the act or omission of a third party." <u>Id.</u> (internal quotation marks and citations omitted). Liere has not demonstrated that there are no issues of fact as to his knowledge about the topsoil--at the very least, he was aware that it would be going somewhere to be spread. The Court will not grant summary judgment to Liere on this basis either.

b.    <u>D&D and Dondero</u>

D&D, citing <u>Town of Islip</u> (245 F. Supp. 3d 397), argues that it is not a "generator," "transporter," or "arranger" under CERCLA. It maintains that it did not make the topsoil (Liere did) nor transport it (Liere's nephew did). (D&D Second Reply at 5;

see <u>supra</u> at 4.)  It further claims that it did not arrange the disposal because it had no knowledge or intent of contamination.

"[T]he determination whether an entity is an arranger requires a fact-intensive inquiry that looks beyond the parties' characterization of the transaction as a 'disposal' or a 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions."  <u>Burlington N. & Santa Fe Ry. Co. v. United States</u>, 556 U.S. 599, 610, 129 S. Ct. 1870, 1879, 173 L. Ed. 2d 812 (2009). The Supreme Court has given the phrase "arrange for disposal of a hazardous substance" its "ordinary meaning" and "[c]onsequently, under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance."  <u>Id.</u> at 611, 129 S. Ct. at 1879.

Though a useful starting point, <u>Burlington</u> "focused entirely on the arranger's intent with respect to the nature of the transaction" and thus "provides no direct guidance on . . . whether [the] alleged arranger must know . . . whether the material was hazardous."  <u>Town of Islip</u>, 245 F. Supp. 3d at 419.  Further, "few courts have addressed whether an arranger defendant must know that the material in question is hazardous[.]"  <u>Id.</u> at 422.  The <u>Town of Islip</u> court concluded that "requiring knowledge of the substance's hazardous nature comports with CERCLA's purpose of preventing responsible parties from contracting away their

liability and deterring them from attempting to do so." Id. at 423 (internal quotation marks and citation omitted). The court thus held that "for arranger liability to apply, a plaintiff must establish that the defendant who arranged for the disposal of material knew, or should have known, that the material contained hazardous substances." Id. at 424. This comports with the general spirit of CERCLA, as "[w]here the dangerousness of the product is unknown to the would-be arranger . . . it is difficult to find that the disposer was trying to evade liability for that danger." Id. at 422 (noting there is no conduct requiring deterrence when the party is unaware that the material contains hazardous substances) (internal quotation marks and citation omitted).

Here, the Court finds that while it is a close decision, there are issues of fact as to D&D's knowledge and intent. Dondero has made sworn statements that he and his employee did not observe any foreign materials in the topsoil. (D&D 56.1 Counterstmt. ¶¶ 7, 16; Dondero Aff., D.E. 34-4, ¶¶ 9-10, 19.) Plaintiffs controvert these statements (Pls. Second 56.1 Resp., D.E. 37-3, at ¶¶ 7, 16) with a citation to Thomas Sheridan's affidavit, specifically, the portion where he states that "within a week of delivery [Plaintiffs] began to observe metal nails of various types [and other debris] in the topsoil." (Sheridan Aff. ¶ 15.) Given

Plaintiffs' discovery of nails and debris[7] in the soil mere days after D&D spread it, a jury could find that D&D knew or should have known of contamination, notwithstanding sworn statements to the contrary. D&D posits that the nails could have been unearthed during a subsequent sprinkler installation (D&D 56.1 Counterstmt. ¶ 22), but that is precisely the type of factual dispute a jury should resolve.

C.   State Law Claims

In addition to their CERCLA claims, Plaintiffs raise several state law claims against Defendants: (1) strict liability in tort; (2) fraud and deceit; (3) breach of contract; (4) unjust enrichment; and (5) negligence. No party has made more than a cursory mention of these state law claims in their papers. The Court thus DENIES summary judgment as to the state law claims.

As the Court is not granting summary judgment to Defendants on the CERCLA or state law claims, it need not consider their arguments regarding its jurisdiction over the state law claims.

D.   Damages

The Complaint seeks $1 million in damages, jointly and severally, and a declaratory judgment that Defendants are liable

---

[7] As already stated, the debris such as nails, metal, plastic, electrical wire can potentially be classified as "solid waste" under CERCLA.

for all future response costs "consistent with the National Contingency Plan." (Compl. ¶ 51, and at 17-18.) Liere seeks summary judgment on Plaintiffs' claim for future response costs, arguing that a predicate for future damages under CERCLA is success on a claim for present liability. D&D does not direct specific arguments at future costs.

CERLCA allows parties to recover "all costs of removal or remedial action incurred . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). Parties may seek recovery of future response costs under CERCLA, which provides that "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). "'[I]n providing for the recovery of response costs, Congress included language to ensure that a responsible party's liability, once established, would not have to be relitigated. The entry of declaratory judgment as to liability is mandatory. The fact that future costs are somewhat speculative is no bar to a present declaration of liability.'" New York v. Green, 420 F. 3d 99, 111 (2d Cir. 2005) (quoting Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 844 (6th Cir. 1994)) (emphasis added). Once there has been a finding of liability, a party "may then bring a subsequent action or actions under section 9607 . . . for further response costs." Id. (internal quotation

marks and citation omitted).  "[I]f and when [a party] brings an action to recover the future costs of remediating [a s]ite, Defendants will be entitled at that time to raise any appropriate objections to the amount of the [ ] costs--for example, that the costs were not actually incurred or that they were inconsistent with the national contingency plan--though Defendants will not be entitled to litigate their liability for such costs." Id.

Liere's request for summary judgment on this ground is thus premature.  If he is found liable under CERCLA, this Court will be required to enter a declaratory judgment on liability for future costs.  If Plaintiffs bring an action for future costs, Liere will have the opportunity to contest the alleged amount,[8] but not his responsibility or liability.  See id. at 110-11 ("Defendants' request for a hearing on the amount of any future damages is premature.  The District Court's [ ] judgment merely

---

[8] Defendants will also be able to challenge Plaintiffs' alleged already-incurred costs.  The Court notes, for example, that Plaintiffs have listed $23,735.27 in attorneys' fees as "response costs"--more than one-third of the response costs alleged. (Sheridan Aff. ¶ 21.)  However, "'[n]either CERCLA § 107, the liabilities and defenses provision, nor § 113, which authorizes contribution claims, expressly mentions the recovery of attorney's fees' and, accordingly, 'expenses incurred solely in preparation for litigation cannot be recovered as response costs unless they significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs.'"  New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 684 (S.D.N.Y. 2015) (quoting Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 174 (2d Cir. 2002)).

declared Defendants liable for all of the State's future response costs; it did not award the State any specific sum").[9]

III. Motion to Withdraw as Attorney

The Court will conduct a hearing with respect to Ms. Factor's motion to withdraw as counsel for D&D and Dondero (D.E. 36).

CONCLUSION

For the foregoing reasons, Liere's motion (D.E. 32) is DENIED; D&D's motion (D.E. 34) is DENIED; and counsel's motion to withdraw (D.E. 36) is GRANTED to the extent that the Court will conduct a hearing.  Ms. Factor shall contact the Court to advise of her and her clients' availability so the Court can schedule the hearing.  Plaintiffs, Liere, and their respective counsel need not be present for the hearing but may attend if they choose.

---

[9] The Plaintiffs have not moved for summary judgment on Defendants' liability, thus, the Court need not enter a declaratory judgment at this stage.  Cf. State of N.Y. v. Almy Bros., Inc., 866 F. Supp. 668, 681-82 (N.D.N.Y. 1994) (court granted the State Plaintiff's motion for summary judgment insofar as it related to the Defendants' CERCLA liability and granted the State's request for a declaration that the Defendants were responsible for the State's future response costs).

The parties are further directed to advise the Court within fourteen (14) days of the date of this Order whether they wish to schedule a settlement conference with Magistrate Judge Arlene R. Lindsay by filing a joint letter on ECF.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March ___29___, 2019
          Central Islip, New York